AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of California

FILED

JAN 17 2020

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One (1) Polaroid Cell Phone<br>Model: P5047A<br>IMEI: 358500080673053 | )<br>)<br>)  Case No.  2 0 M J 0 1 9 8<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 952<br>21 U.S.C. § 960 | Importation of a controlled substance and Prohibited Acts A |

The application is based on these facts:

See attached Affidavit of HSI Special Agent Keith Laughlin

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____  1/17/2020
*Applicant's signature*

HSI Special Agent Keith Laughlin
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  1/17/20

_____
*Judge's signature*

Honorable Judge Bernard G. Skomal
*Printed name and title*

City and state:  San Diego, CA

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |
| **One (1) Polaroid Cell Phone**<br>Model:  P5047A<br>IMEI: 358500080673053 | |

I, Keith Laughlin, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1.      This affidavit is made in support of an application for a warrant to search the following:

   a.      **One (1) Polaroid Cell Phone**
     **Model:  P5047A**
     **IMEI: 358500080673053**, hereinafter **Target Telephone**

2.      **Target Telephone** was seized from Ramon Reyes ROBLES ("ROBLES") on December 14, 2019, at the time of his arrest at the Otay Mesa, California Port of Entry for importing 5.14 kilograms (11.33 pounds) of methamphetamine concealed within his vehicle, in violation of Title 21, U.S.C. §§ 952 and 960.  **Target Telephone** is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101.

3.      Based on the information below, there is probable cause to believe that a search of **Target Telephone** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephone**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximate.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have been a full-time, sworn federal agent with HSI since August of 2006. Prior to becoming a Special Agent I attended and successfully completed the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training at the Federal Law Enforcement Training Center, in Brunswick, Georgia. The combined Academy curriculums covered specialized training in the Immigration and Naturalization Act, criminal investigations, criminal law, and statutory authority, as well as cross-training in Title 21 United States Code, controlled substances violations, and in Title 19 United States Code, customs law violations.

6. Prior to becoming a Special Agent with HSI, I served as a Customs Inspector for 6 years, having graduated the United States Customs Inspector Basic Training Academy in April of 2000. I have participated in and conducted investigations involving violations of various State and Federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of communication facilities to commit controlled substance offenses, importation of controlled substances.

2

7.      I am currently assigned to HSI's Cargo Smuggling Group, specifically investigating, arresting, and prosecuting narcotics smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor as well as offenses that occur at the Ports of Entry in San Diego County in violation of Title 21 of the United States Code and the California Health and Safety Code.  I have conferred with other agents and law enforcement personnel who are experienced in the area of criminal investigations, and the opinions stated below are shared by them. The information contained in this affidavit is based on my own investigation and oral and written reports by other law enforcement officers.

8.      During the course of my employment with HSI and with the United States Customs Service, I have conducted over 75 investigations and assisted in numerous more, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants and the indictments and arrests of persons for a variety of federal and state offenses. Through my training and experience, I have gained a working knowledge and insight into the typical workings of narcotics smuggling organizations.

9.      I have also gained extensive information as to the normal operational habits of persons who make their living as narcotics smugglers. I am aware that it is a common practice for narcotics smugglers to use cellular telephones, pagers and portable radios to maintain communications with co-conspirators and coordinate smuggling arrangements to further their criminal activities. I have conducted investigations concerning the identification of co-conspirators through the use of communication facilities, financial records, commercial and government databases, drug ledgers, photographs, and other documents. I have interviewed hundreds of individuals that were directly involved in selling, using, importing, trafficking, distributing controlled substances and money laundering, all in violation of Title 21 and Title 18, United States Code.

10.     By virtue of my employment as a Special Agent with HSI, I have performed various tasks and training, which include, but are not limited to:

3

a.     Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

b.     Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances; and

c.     Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics.

11.     Through the course of my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers, electronic media storage devices and portable radios to maintain communications with co-conspirators to further their criminal activities. The smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

//////

//////

4

12.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a.     Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.     Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c.     Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.     Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f.     Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds; and

g.     The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

13.     Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Much of the evidence generated by a

1  smuggler's use of a cellular telephone would likely be stored on any SIM Card that has
2  been utilized in connection with that telephone.

3       14.    Based upon my training and experience as a Special Agent, and consultations
4  with law enforcement officers experienced in narcotics trafficking investigations, and all
5  the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can
6  and often do contain electronic records, phone logs and contacts, voice and text
7  communications, and data such as emails, text messages, chats and chat logs from various
8  third-party applications, photographs, audio files, videos, and location data. This
9  information can be stored within disks, memory cards, deleted data, remnant data, slack
10  space, and temporary or permanent files contained on or in the cellular/mobile telephone.
11  Specifically, I know based upon my training, education, and experience investigating these
12  conspiracies that searches of cellular/mobile telephones yields evidence:

13           a.    tending to identify attempts to import methamphetamine or other
14                  controlled substances from Mexico into the United States and to
15                  distribute controlled substances within the United States;

16           b.    tending to identify accounts, facilities, storage devices, and/or services–
17                  such as email addresses, IP addresses, and phone numbers–used to
18                  facilitate the smuggling of methamphetamine or some other controlled
                substance from Mexico into the United States;

19           c.    tending to identify co-conspirators, criminal associates, or others
20                  involved in smuggling methamphetamine or some other controlled
21                  substance from Mexico into the United States;

22           d.    tending to identify travel to or presence at locations involved in the
23                  smuggling of methamphetamine or some other controlled substance
24                  from Mexico into the United States, such as stash houses, load houses,
                or delivery points;

25           e.    tending to identify the user of, or persons with control over or access
26                  to, the subject telephone; and/or

27

28

                        6

     f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

15.    In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of 21 U.S.C. §§ 952, 960.

16.    Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

**FACTS SUPPORTING PROBABLE CAUSE**

17.    On December 14, 2019 at approximately 3:44 a.m., ROBLES, a United States citizen, entered the United States from Mexico through the Otay Mesa, California, Port of Entry. ROBLES was the driver, owner, and sole occupant of a gray colored 2002 BMW X5 bearing a California license plate.

18.    ROBLES was referred for intensive exam due to a computer-generated referral. While in the secondary lot, a U.S. Customs and Border Protection Officer (CBPO) screened the vehicle with his assigned narcotics and human detection dog, which alerted to a trained odor in the vehicle's gas tank.

//////

//////

19.   While inspecting the BMW, another CBPO removed the gasoline sending unit and observed multiple clear plastic vacuum sealed packages, consistent with narcotic smuggling.

20.   A licensed mechanic was contacted to access the gasoline tank of the BMW. A total of ten packages were removed from inside the gasoline tank. A CBPO overseeing the removal of the packages, probed one of them and extracted a white crystal-like substance, which field tested positive for the properties of methamphetamine. The ten (10) packages of methamphetamine weighed 5.14 kilograms (11.33 pounds).

21.   ROBLES was arrested and **Target Telephone** was seized from his person. Furthermore, post-Miranda, ROBLES admitted that the **Target Telephone** was his and provided the access code (PIN) for the **Target Telephone**.

22.   Based upon my experience and investigation in this case, I believe that ROBLES is involved in narcotics smuggling activities. Based upon my experience training and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ROBLES, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Telephone**.

23.   Finally, drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement.  In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as ROBLES will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for

8

weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search **Target Telephone** for data beginning on September 14, 2019, up to and including the entire day of December 14, 2019.

## METHODOLOGY

24. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the

1  telephone and its memory cards will employ search protocols directed exclusively to the
2  identification and extraction of data within the scope of this warrant.

3       26.   Based on the foregoing, identifying and extracting data subject to seizure
4  pursuant to this warrant may require a range of data analysis techniques, including manual
5  review, and, consequently, may take weeks or months. The personnel conducting the
6  identification and extraction of data will complete the analysis within ninety (90) days,
7  absent further application to this court.

8  **CONCLUSION**

9       27.   Based upon my experience, training, and consultation with other law
10  enforcement officers experienced in narcotics smuggling investigations, and all the facts
11  and opinions set forth in this affidavit, I believe there is probable cause to conclude that
12  **Target Telephone** was used to facilitate the offense of importation of controlled
13  substances. **Target Telephone** was likely used to facilitate the offense by transmitting and
14  storing data, which constitutes evidence of violations of Title 21, United States Code,
15  Sections 952, 960.

16       28.   Because **Target Telephone** was seized, there is also probable cause to believe
17  that evidence of the illegal activities committed by ROBLES, as described in Attachment
18  B, continue to exist on **Target Telephone**.

19  //////
20  //////
21  //////
22  //////
23  //////
24  //////
25  //////
26  //////
27
28

1    29.    Therefore, I respectfully request that the Court issue a warrant authorizing

2   HSI Special Agents and/or other federal and state law enforcement officers specially

3   trained in digital evidence recovery, to search the items described in Attachment A, and

4   seize items listed in Attachment B using the methodology described above.

5         I swear the foregoing is true and correct to the best of my knowledge and belief.

6

7

8   Keith Laughlin

    Special Agent

9   Homeland Security Investigations

10

11  SUBSCRIBED and SWORN to before me this ___17___ day of January, 2020.

12

13

14  The Honorable Bernard B. Skomal

15  United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28
                                  11

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code Sections 952 and 960, is described below:

(1) One Polaroid Cell Phone.  Model: P5047A. IMEI:358500080673053

**ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone.  The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of September 14, 2019 through December 14, 2019.

a.  tending to identify attempts to transport methamphetamine and/or cocaine and/or heroin and/or any other controlled substance from the United States to Mexico;

b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine and/or cocaine and/or heroin, and/or any other controlled substance from the United States to Mexico;

c.  tending to identify co-conspirators, criminal associates, or others involved the smuggling of methamphetamine and/or cocaine and/or heroin and/or any other controlled substance from the United States to Mexico;

d.  tending to identify travel to or presence at locations involved the smuggling of methamphetamine and/or cocaine and/or heroin and/or any other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone and/or;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952 and 960**.

The seizure and search of the cellular phone shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone may be searched for the evidence above.